**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.K., A.K.-1, and A.K.-2**

**No. 21-0067** (Webster County 20-JA-27, 20-JA-28, and 20-JA-29)

**MEMORANDUM DECISION**

Petitioner Father G.K., by counsel Andrew B. Chattin, appeals the Circuit Court of Webster County's December 29, 2020, order terminating his parental rights to J.K., A.K.-1, and A.K.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Mary Elizabeth Snead, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred in terminating his parental rights without granting him an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2020, the DHHR filed an abuse and neglect petition alleging that Child Protective Services ("CPS") initiated an investigation upon a referral that the mother permitted a registered sex offender to live in the home with the children. Ultimately, CPS confirmed that N.W., a registered sex offender, had lived in the home for "a couple of months." CPS implemented a seven-day protection plan that prohibited N.W. from being around the children, but it was unsuccessful, given that N.W. was again observed in the home following the plan's expiration, which led to the removal of the children from the mother's home. In regard to petitioner, the DHHR alleged that there was an active domestic violence protective order in place between him and the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, they will be referred to as A.K.-1 and A.K.-2 throughout this memorandum decision.

mother and that petitioner violated this order several times, resulting in multiple arrests for his separate violations. At the time the petition was filed, petitioner was incarcerated and failed a drug screen upon his arrest.[2] Petitioner also admitted to CPS that he abused methamphetamine. Based on the foregoing, the DHHR alleged that petitioner was addicted to controlled substances to the extent that it affected his ability to properly parent the children.

Following the petition's filing, petitioner filed a motion for an improvement period in August of 2020. At an adjudicatory hearing in September of 2020, petitioner stipulated to being addicted to controlled substances to the extent that he was unable to properly parent the children. As such, the court adjudicated him as an abusive and neglectful parent.

In December of 2020, the court held a dispositional hearing. Petitioner did not attend the hearing, but he was represented by counsel. A CPS worker testified about petitioner's noncompliance with services, including the fact that he tested positive on at least four drug screens during the proceedings, including for methamphetamine. The CPS worker also indicated that petitioner failed to screen from September of 2020 through November of 2020 and was not compliant with parenting services. The worker discussed substance abuse treatment with petitioner but testified that petitioner had not submitted to such treatment, to her knowledge. Petitioner's counsel indicated that he spoke to petitioner shortly before the hearing and that petitioner "told [counsel] that he was going to try to go to rehab," but counsel admitted that he did not know where petitioner was on the day of the hearing and that there was no evidence admitted that petitioner submitted to substance abuse treatment. The worker also indicated that petitioner informed her that he stopped complying with services because visits with his children were cancelled. Finally, the CPS worker testified that she visited petitioner's residence shortly before the dispositional hearing and it lacked plumbing and was generally unsuitable for the children.

Based on the evidence, the court found that petitioner failed to comply with drug testing, as required to obtain visits with the children. The court also found that petitioner failed to establish that he would comply with the terms and conditions of an improvement period and that there was no reasonable likelihood that he could substantially correct the conditions of abuse and neglect in the near future. Finding that it was necessary for the children's welfare, the circuit court terminated petitioner's parental rights.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such

---

[2]It is unclear from the record, but it appears that petitioner was released from incarceration following the petition's filing.

[3]The mother is currently participating in an improvement period, and the children have been returned to her physical custody. According to respondents, the permanency plan for the children is to remain with their mother.

child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that it was error to terminate his parental rights without first granting him an improvement period. Although petitioner asserts that he believes he could have corrected the conditions of abuse and neglect had he been granted an improvement period, he cites to no actual evidence in support of this assertion. Upon review, we find that the evidence below overwhelmingly supported the circuit court's denial of his motion.

We have explained that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the [parent] is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004) (citation omitted). Here, petitioner could not satisfy this burden for several reasons. Most importantly, the evidence established that petitioner did not meaningfully participate in the proceedings at any time. Indeed, a CPS worker testified that petitioner refused to comply with drug screens, tested positive for methamphetamine when he did screen, did not fully participate in parenting services, and was denied visitation with the children because of his lack of participation. Further, petitioner failed to attend the dispositional hearing to advocate for an improvement period or otherwise demonstrate the likelihood that he would comply if granted one. As such, it is clear that petitioner did not satisfy this burden.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). On appeal, petitioner argues that he should have been granted an improvement period "to show the [c]ourt that he could correct the conditions that led to the filing of this petition." Petitioner ignores, however, that he was given just such an opportunity in the months prior to the final dispositional hearing, yet he failed to participate in the services offered. Because petitioner failed to meaningfully participate in the proceedings in any way, we find no abuse of discretion in the circuit court's denial of his motion.

This same evidence also supports the circuit court's termination of petitioner's parental rights. In attacking the termination of his parental rights, petitioner simply alleges—again with no reference to any substantive evidence—that the circuit court's finding that there was no reasonable likelihood that he could substantially correct the conditions of abuse and neglect was in error.

Contrary to petitioner's bald assertion, the record shows that the evidence overwhelmingly supports this finding.

Pursuant to West Virginia Code § 49-4-604(d)(3), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which the parent has "not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child." As made clear above, petitioner failed to participate in the proceedings in any meaningful way. As such, it is clear that the circuit court did not err in making this finding. Further, the court found that termination of petitioner's parental rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate parental rights upon such findings. Further, as this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the overwhelming evidence in support of these determinations, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 29, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

4